**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| STA GROUP LLC,<br><br>        Plaintiff,<br><br>   v.<br><br>MOTOROLA SOLUTIONS, INC.,<br><br>       Defendant. | Case No. 2:23-cv-00030-JRG-RSP<br><br>**JURY TRIAL DEMANDED** |
| MOTOROLA SOLUTIONS, INC.<br><br>      Counterclaim Plaintiff,<br><br>   v.<br><br>STA GROUP LLC, DILLON KANE GROUP LLC, and INSTANT CONNECT SOFTWARE LLC,<br><br>      Counterclaim Defendants. | |

## DEFENDANT'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Defendant and Counterclaimant Motorola Solutions, Inc. ("MSI") hereby submits its Answer and Counterclaims to the Complaint for Patent Infringement ("Complaint") of Plaintiff STA Group LLC ("STA").

## ANSWER

MSI herein provides its response to each paragraph of the Complaint. For the reasons set forth in MSI's pending motion to dismiss (Dkt. 13), MSI requests this Court to dismiss STA's Complaint for failure to state a claim. In providing the following responses to the Complaint,

MSI expressly maintains, and does not waive, its contention that STA has failed to plead any factual allegations that articulate any plausible basis for alleged infringement.

Unless specifically admitted below, MSI denies each and every allegation in the Complaint. MSI states that the un-numbered paragraph preceding the heading "The Parties" does not set forth allegations against MSI, and thus does not require an admission or denial. MSI repeats the headings from the Complaint for purposes of convenience. To the extent un-numbered paragraphs or headings of the Complaint are construed as allegations, they are each denied.

## THE PARTIES

1.      MSI lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore denies the same.

2.      MSI admits it is a Delaware corporation. The remaining allegations of paragraph 2 contain legal conclusions to which no response is required. To the extent a response is required, MSI admits that, as of the filing of this Answer, one of its subsidiaries has operations at 415 East Exchange Parkway, Allen, TX, 75002. MSI denies any remaining allegations in paragraph 2.

## JURISDICTION AND VENUE

3.      MSI admits that the Complaint purports to assert claims of patent infringement arising under the Patent Act, 35 U.S.C. § 101 *et seq*, but denies that STA states a claim of infringement upon which relief can be granted, denies that it has committed or is committing acts of infringement, including in this District, and denies STA is entitled to relief. Notwithstanding STA's lack of standing, MSI admits that subject matter jurisdiction is otherwise proper in this Court under 28 U.S.C. §§ 1331 and 1338(a). MSI denies any remaining allegations in paragraph 3 of the Complaint.

ACTIVE/600161479

4. For purposes of this action only, MSI does not contest personal jurisdiction but denies that venue is convenient in this District and reserves all rights to seek transfer to a more convenient forum. MSI denies that it has committed any acts of infringement as alleged by STA. MSI denies any remaining allegations in paragraph 4 of the Complaint.

5. MSI admits that it provides certain products and services in the United States, including in this District. MSI denies any remaining allegations in paragraph 5 of the Complaint.

6. For purposes of this action only, MSI does not contest venue or personal jurisdiction but denies that venue is convenient in this District and reserves all rights to seek transfer to a more convenient forum.

7. The allegations of paragraph 7 contain legal conclusions and characterizations of an undated document allegedly accessed by STA in September 2022, to which no response is required. To the extent a response is required, the referenced document speaks for itself, and MSI denies the remaining allegations in paragraph 7.

8. The allegations of paragraph 8 contain legal conclusions and apparent characterizations of an MSI Annual Report allegedly accessed by STA at a third-party website, to which no response is required. To the extent a response is required, the referenced document speaks for itself, but the link cited by STA is not operational, and MSI therefore lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 8.

9. MSI denies that it acquired an entity named "Kodiak Solutions" but admits it acquired Kodiak Networks, Inc. in 2017. The remaining allegations of paragraph 9 characterize an MSI press release allegedly accessed by STA, to which no response is required. To the extent a

ACTIVE/600161479

response is required, the referenced document speaks for itself, and MSI denies the remaining allegations in paragraph 9.

10.     MSI admits that, as of the filing of this Answer, the URL http://kodiakptt.com forwards to a webpage on MSI's website. MSI denies any remaining allegations in paragraph 10 of the Complaint.

11.     The allegations of paragraph 11 contain legal conclusions, to which no response is required. Moreover, paragraph 11 does not provide sufficient context or information to allow for a response, and on at least that basis, MSI denies the allegations in paragraph 11.

12.     The allegations of paragraph 12 contain vague and ambiguous characterizations of a portion of a website, to which no response is required. To the extent a response is required, the website cited by STA does not show any job openings in this District "posted as recently as January 24, 2023." MSI denies any remaining allegations in paragraph 12 of the Complaint.

13.     MSI admits the allegations in paragraph 13 of the Complaint.

14.     The allegations of paragraph 14 contain vague and ambiguous characterizations regarding so-called "accused WAVE products" without defining the term or identifying any product that STA contends falls within the vague and ambiguous category "accused WAVE products." Because paragraph 14 does not provide sufficient context or information to allow for a response, MSI denies the allegations in paragraph 14 of the Complaint. MSI further denies it has committed or is committing acts of infringement, including in this District, and denies STA is entitled to relief.

15.     The allegations of paragraph 15 contain vague and ambiguous characterizations regarding so-called "Motorola WAVE and Motorola P25 Products" without defining the term or identifying any product that STA contends falls within this vague and ambiguous category

ACTIVE/600161479

"Motorola WAVE and Motorola P25 Products." Because paragraph 15 does not provide sufficient context or information to allow for a response, MSI denies the allegations in paragraph 15. MSI further denies it has committed or is committing acts of infringement, including in this District, and denies STA is entitled to relief. MSI denies any remaining allegations in Paragraph 15 of the Complaint.

## THE PATENTS-IN-SUIT

### A.    The '324 Patent

16.    MSI admits that, on its face, the '324 patent indicates that it is titled, "Tone Signaling," and was issued on September 6, 2011. MSI also admits that, on its face, the '324 patent lists an application number of 12/277,709, filed on November 11, 2008. MSI also admits that Exhibit A to the Complaint purports to be a copy of the '324 patent. MSI lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 16 of the Complaint, and on that basis, MSI denies them.

17.    MSI denies the allegations in paragraph 17 of the Complaint.

18.    MSI denies the allegations in paragraph 18 of the Complaint.

19.    MSI denies the allegations in paragraph 19 of the Complaint. STA lacks standing to sue for alleged infringement of the '324 patent.

### B.    The '249 Patent

20.    MSI admits that, on its face, the '249 patent indicates that it is titled, "Method and System for Providing Proxy Media Service," and was issued on March 27, 2012. MSI also admits that, on its face, the '249 patent lists an application number of 11/267,915, filed on November 4, 2005. MSI also admits that Exhibit B to the Complaint purports to be a copy of the '249 patent. MSI lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 20 of the Complaint, and on that basis, MSI denies them.

5

21.     MSI denies the allegations in paragraph 21 of the Complaint.

22.     MSI denies the allegations in paragraph 22 of the Complaint.

23.     MSI denies the allegations in paragraph 23 of the Complaint. STA lacks standing to sue for alleged infringement of the '249 patent.

C.     **The '737 Patent**

24.     MSI admits that, on its face, the '737 patent indicates that it is titled, "A Multiplexing and Demultiplexing Radio Channels," and was issued on June 2, 2015. MSI also admits that, on its face, the '737 patent lists an application number of 13/311,545, filed on December 5, 2011. MSI also admits that Exhibit C to the Complaint purports to be a copy of the '737 patent. MSI lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 24 of the Complaint, and on that basis, MSI denies them.

25.     MSI denies the allegations in paragraph 25 of the Complaint.

26.     MSI denies the allegations in paragraph 26 of the Complaint.

27.     MSI denies the allegations in paragraph 27 of the Complaint. STA lacks standing to sue for alleged infringement of the '737 patent.

D.     **The '852 Patent**

28.     MSI admits that, on its face, the '852 patent indicates that it is titled, "Inoperability and Communications System Dynamic Media Proxy Based on Capability Negotiation," and was issued on April 19, 2016. MSI also admits that, on its face, the '852 patent lists an application number of 14/523,299, filed on October 24, 2014. MSI also admits that Exhibit D to the Complaint purports to be a copy of the '852 patent. MSI lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 28 of the Complaint, and on that basis, MSI denies them.

29.     MSI denies the allegations in paragraph 29 of the Complaint.

30. MSI denies the allegations in paragraph 30 of the Complaint.

31. MSI denies the allegations in paragraph 31 of the Complaint. STA lacks standing to sue for alleged infringement of the '852 patent.

**STA'S "ALLEGATIONS OF PATENT INFRINGEMENT"**

32. The allegations of paragraph 32 contain vague and ambiguous characterizations regarding so-called "Motorola WAVE Systems and Motorola P25 Products" without defining the vague and ambiguous category "Motorola WAVE Systems and Motorola P25 Products." For the reasons set forth in MSI's pending motion to dismiss (Dkt. 13), STA fails to make a single factual allegation as to how or why any single product infringes. Paragraph 32, either individually or considered with the rest of the allegations in the Complaint, does not articulate why it is plausible that the listed products infringe any claim of the asserted patents and does not provide notice to MSI of the basis for alleged infringement. MSI therefore denies all allegations in paragraph 32.

33. In paragraph 33, STA purports to define a group of functionalities as "the Motorola WAVE Products." For the reasons set forth in MSI's pending motion to dismiss (Dkt. 13), the purported "Motorola WAVE Products" include a list of disparate products having widely varying functionality, and MSI denies that the listed functionalities are related to each other or appropriately categorized as "Motorola WAVE Products." MSI also states that STA fails to make a single factual allegation as to how or why any single product infringes. Paragraph 33, either individually or considered with the rest of the allegations in the Complaint, does not articulate why it is plausible that the listed products infringe any claim of the asserted patents and does not provide notice to MSI of infringement. MSI denies all remaining allegations in paragraph 33.

34. In paragraph 34, STA purports to define a group of functionalities as "the Motorola P25 Products." For the reasons set forth in MSI's pending motion to dismiss (Dkt. 13), the

ACTIVE/600161479

purported "Motorola P25 Products" include a list of disparate products having widely varying functionality, and MSI denies that the listed functionalities are related to each other or appropriately categorized as "Motorola P25 Products." MSI also states that STA fails to make a single factual allegation as to how or why any single product infringes. Paragraph 34, either individually or considered with the rest of the allegations in the Complaint, does not articulate why it is plausible that the listed products infringe any claim of the asserted patents and does not provide notice to MSI of infringement. MSI denies all remaining allegations in paragraph 34.

35.     For the reasons set forth in MSI's pending motion to dismiss (Dkt. 13), STA has failed to plead any factual allegations that articulate any plausible basis for alleged infringement. MSI denies that STA sufficiently accuses the listed functionalities of infringement. MSI denies that STA has supplemented the "[i]dentification of the Accused Products" "as needed in Plaintiff's infringement contentions pursuant to the Court's scheduling order and local rules." MSI further denies it has committed or is committing acts of infringement, including in this District, and denies STA is entitled to relief. MSI denies any remaining allegations in paragraph 35 of the Complaint.

36.     MSI denies the allegations in paragraph 36 of the Complaint.

37.     The allegations of paragraph 37 of the Complaint state a legal conclusion, to which no response is required. To the extent any response is required, MSI denies the allegations contained in paragraph 37 of the Complaint.

38.     For the reasons set forth in MSI's pending motion to dismiss (Dkt. 13), STA has failed to plead any factual allegations that articulate any plausible basis for alleged infringement. MSI denies it has committed or is committing acts of infringement, including in this District, and denies STA is entitled to relief. MSI denies all other remaining allegations in paragraph 38 of the Complaint.

ACTIVE/600161479

## COUNT 1: ALLEGED "INFRINGEMENT OF U.S. PATENT NO. 8,014,324"

39.     Paragraph 39 of the Complaint does not require an answer. To the extent any response is required, MSI repeats and realleges its responses to the preceding paragraphs as if fully set forth herein.

40.     MSI denies the allegations in paragraph 40 of the Complaint. STA lacks standing to sue for alleged infringement of the '324 patent.

41.     For the reasons set forth in MSI's pending motion to dismiss (Dkt. 13), MSI denies that STA states a claim of infringement upon which relief can be granted. MSI denies all remaining allegations in paragraph 41 of the Complaint.

42.     MSI admits it was served with the Complaint in this matter identifying the '324 patent. For the reasons set forth in MSI's pending motion to dismiss (Dkt. 13), MSI denies that STA states a claim of infringement upon which relief can be granted. MSI denies all remaining allegations in paragraph 42 of the Complaint.

43.     For the reasons set forth in MSI's pending motion to dismiss (Dkt. 13), MSI denies that STA states a claim of infringement upon which relief can be granted. MSI denies all remaining allegations in paragraph 43 of the Complaint.

44.     For the reasons set forth in MSI's pending motion to dismiss (Dkt. 13), MSI denies that STA states a claim of infringement upon which relief can be granted. MSI denies all remaining allegations in paragraph 44 of the Complaint.

45.     For the reasons set forth in MSI's pending motion to dismiss (Dkt. 13), MSI denies that STA states a claim of infringement upon which relief can be granted. MSI denies all remaining allegations in paragraph 45 of the Complaint.

46.     MSI admits that Exhibit E to the Complaint purports to be a claim chart relating to the '324 patent. For the reasons set forth in MSI's pending motion to dismiss (Dkt. 13), MSI denies that STA states a claim of infringement upon which relief can be granted. MSI denies it has committed or is committing acts of infringement, including in this District, and denies STA is entitled to relief. MSI denies any remaining allegations in Paragraph 46.

**COUNT 2: ALLEGED "INFRINGEMENT OF U.S. PATENT NO. 8,145,249"**

47.     Paragraph 47 of the Complaint does not require an answer. To the extent any response is required, MSI repeats and realleges its responses to the preceding paragraphs as if fully set forth herein.

48.     MSI denies the allegations in paragraph 48 of the Complaint. STA lacks standing to sue for alleged infringement of the '249 patent.

49.     For the reasons set forth in MSI's pending motion to dismiss (Dkt. 13), MSI denies that STA states a claim of infringement upon which relief can be granted. MSI denies all remaining allegations in paragraph 49 of the Complaint.

50.     MSI admits it was served with the Complaint in this matter identifying the '249 patent. For the reasons set forth in MSI's pending motion to dismiss (Dkt. 13), MSI denies that STA states a claim of infringement upon which relief can be granted. MSI denies all remaining allegations in paragraph 50 of the Complaint.

51.     For the reasons set forth in MSI's pending motion to dismiss (Dkt. 13), MSI denies that STA states a claim of infringement upon which relief can be granted. MSI denies all remaining allegations in paragraph 51 of the Complaint.

ACTIVE/600161479

52.     For the reasons set forth in MSI's pending motion to dismiss (Dkt. 13), MSI denies that STA states a claim of infringement upon which relief can be granted. MSI denies all remaining allegations in paragraph 52 of the Complaint.

53.     For the reasons set forth in MSI's pending motion to dismiss (Dkt. 13), MSI denies that STA states a claim of infringement upon which relief can be granted. MSI denies all remaining allegations in paragraph 53 of the Complaint.

54.     MSI admits that Exhibit F to the Complaint purports to be a claim chart relating to the '249 patent. For the reasons set forth in MSI's pending motion to dismiss (Dkt. 13), MSI denies that STA states a claim of infringement upon which relief can be granted. MSI denies it has committed or is committing acts of infringement, including in this District, and denies STA is entitled to relief. MSI denies any remaining allegations in Paragraph 54.

**COUNT 3: ALLEGED "INFRINGEMENT OF U.S. PATENT NO. 9,049,737"**

55.     Paragraph 55 of the Complaint does not require an answer. To the extent any response is required, MSI repeats and realleges its responses to the preceding paragraphs as if fully set forth herein.

56.     MSI denies the allegations in paragraph 56 of the Complaint. STA lacks standing to sue for alleged infringement of the '737 patent.

57.     For the reasons set forth in MSI's pending motion to dismiss (Dkt. 13), MSI denies that STA states a claim of infringement upon which relief can be granted. MSI denies all remaining allegations in paragraph 57 of the Complaint.

58.     MSI admits it was served with the Complaint in this matter identifying the '737 patent. For the reasons set forth in MSI's pending motion to dismiss (Dkt. 13), MSI denies that

ACTIVE/600161479

STA states a claim of infringement upon which relief can be granted. MSI denies all remaining allegations in paragraph 58 of the Complaint.

59.     For the reasons set forth in MSI's pending motion to dismiss (Dkt. 13), MSI denies that STA states a claim of infringement upon which relief can be granted. MSI denies all remaining allegations in paragraph 59 of the Complaint.

60.     For the reasons set forth in MSI's pending motion to dismiss (Dkt. 13), MSI denies that STA states a claim of infringement upon which relief can be granted. MSI denies all remaining allegations in paragraph 60 of the Complaint.

61.     For the reasons set forth in MSI's pending motion to dismiss (Dkt. 13), MSI denies that STA states a claim of infringement upon which relief can be granted. MSI denies all remaining allegations in paragraph 61 of the Complaint.

62.     MSI admits that Exhibit G to the Complaint purports to be a claim chart relating to the '737 patent. For the reasons set forth in MSI's pending motion to dismiss (Dkt. 13), MSI denies that STA states a claim of infringement upon which relief can be granted. MSI denies it has committed or is committing acts of infringement, including in this District, and denies STA is entitled to relief. MSI denies any remaining allegations in Paragraph 62.

**COUNT 4: ALLEGED "INFRINGEMENT OF U.S. PATENT NO. 9,313,852"**

63.     Paragraph 63 of the Complaint does not require an answer. To the extent any response is required, MSI repeats and realleges its responses to the preceding paragraphs as if fully set forth herein.

64.     MSI denies the allegations in paragraph 64 of the Complaint. STA lacks standing to sue for alleged infringement of the '852 patent.

ACTIVE/600161479

65.     For the reasons set forth in MSI's pending motion to dismiss (Dkt. 13), MSI denies that STA states a claim of infringement upon which relief can be granted. MSI denies all remaining allegations in paragraph 65 of the Complaint.

66.     MSI admits it was served with the Complaint in this matter identifying the '852 patent. For the reasons set forth in MSI's pending motion to dismiss (Dkt. 13), MSI denies that STA states a claim of infringement upon which relief can be granted. MSI denies all remaining allegations in paragraph 66 of the Complaint.

67.     For the reasons set forth in MSI's pending motion to dismiss (Dkt. 13), MSI denies that STA states a claim of infringement upon which relief can be granted. MSI denies all remaining allegations in paragraph 67 of the Complaint.

68.     For the reasons set forth in MSI's pending motion to dismiss (Dkt. 13), MSI denies that STA states a claim of infringement upon which relief can be granted. MSI denies all remaining allegations in paragraph 68 of the Complaint.

69.     For the reasons set forth in MSI's pending motion to dismiss (Dkt. 13), MSI denies that STA states a claim of infringement upon which relief can be granted. MSI denies all remaining allegations in paragraph 69 of the Complaint.

70.     MSI admits that Exhibit H to the Complaint purports to be a claim chart relating to the '852 patent. For the reasons set forth in MSI's pending motion to dismiss (Dkt. 13), MSI denies that STA states a claim of infringement upon which relief can be granted. MSI denies it has committed or is committing acts of infringement, including in this District, and denies STA is entitled to relief. MSI denies any remaining allegations in Paragraph 70.

**GENERAL DENIAL**

ACTIVE/600161479

71.     MSI further denies each and every allegation contained in STA's Complaint that MSI has not specifically admitted, denied, or otherwise responded to herein.

### STA'S JURY DEMAND

MSI states that the un-numbered paragraph preceding the heading "Prayer For Relief" does not require an answer. To the extent any response is required, MSI admits that the Complaint sets forth a request for trial by jury. MSI denies that STA is entitled to any of the relief requested in the Complaint against MSI.

### STA'S PRAYER FOR RELIEF

MSI denies that STA is entitled to any of the relief requested in the Prayer for Relief against MSI. To the extent that STA's Prayer for Relief contains any factual allegations, MSI denies them.

### DEFENSES

1.      Without assuming any burden that it would not otherwise have, MSI asserts the following defenses in response to the allegations in STA's Complaint. STA's burden of proof is established by applicable law and is not changed by MSI's statement of these defenses herein.

### FAILURE TO STATE A CLAIM

2.      The Complaint fails to state a claim upon which relief can be granted, including for the reasons set forth in MSI's pending motion to dismiss (Dkt. 13).

### NON-INFRINGEMENT

3.      For the reasons set forth in MSI's pending motion to dismiss (Dkt. 13), MSI denies that STA states a claim of infringement upon which relief can be granted. MSI further has not willfully, intentionally, recklessly, knowingly, jointly, or otherwise infringed (literally or by equivalents), induced infringement of, or contributed to the infringement of any valid and

14

enforceable claim of any of the '324 patent, '249 patent, '737 patent, or '852 patent (the "Asserted Patents").

## INVALIDITY

4.      The claims of the '324 patent are invalid for failure to comply with the statutory requirements of one or more of the provisions of Title 35 of the United States Code, including §§ 101, 102, 103, 112, 116, 119 and/or 120.

5.      The claims of the '249 patent are invalid for failure to comply with the statutory requirements of one or more of the provisions of Title 35 of the United States Code, including §§ 101, 102, 103, 112, 116, 119 and/or 120.

6.      The claims of the '737 patent are invalid for failure to comply with the statutory requirements of one or more of the provisions of Title 35 of the United States Code, including §§ 101, 102, 103, 112, 116, 119 and/or 120.

7.      The claims of the '852 patent are invalid for failure to comply with the statutory requirements of one or more of the provisions of Title 35 of the United States Code, including §§ 101, 102, 103, 112, 116, 119 and/or 120.

## NO WILLFUL INFRINGEMENT OR ENHANCED DAMAGES

8.      STA has failed to state a claim for willful infringement upon which relief can be granted. MSI has committed no wrongdoing or infringement, and STA has failed to plead and cannot show any willful infringement occurred. STA is not entitled to enhanced damages under 35 U.S.C. § 284 or pursuant to the Court's inherent powers.

## PROSECUTION HISTORY ESTOPPEL

9.      Based on the proceedings before the United States Patent and Trademark Office ("USPTO") during the prosecution of the applications that ultimately issued as the Asserted

ACTIVE/600161479

Patents and/or the application(s) to which the Asserted Patents claim priority and/or during any post-grant review proceeding related to the Asserted Patents, the full scope of any allegedly infringed claim of the Asserted Patents has been disclaimed and/or disavowed and, as such, STA is estopped from construing any such claim to cover or include, either literally or under the doctrine of equivalents, any product, system, or service of, or any method performed in whole or in part by MSI.

## LICENSE, ESTOPPEL, ACQUIESCENCE, AND/OR WAIVER

10.     STA is barred, in whole or in part, from seeking any relief based on an express or implied license, and/or because of estoppel, acquiescence, waiver, and/or other available equitable defenses.

## LIMITATION ON DAMAGES AND COSTS

11.     STA's claims for relief are limited or barred, in whole or in part, by 35 U.S.C. §§ 286, 287, and/or 288. STA is also not entitled to a finding that this case is exceptional and is not entitled to attorneys' fees under 35 U.S.C. § 285, the Court's inherent powers, or any other fee-shifting authority.

## NO STANDING

12.     STA lacks standing to assert claims of alleged infringement of the Asserted Patents.

## GOVERNMENT SALES

13.     STA's claims for infringement as they relate to any product manufactured by MSI for use by the United States are limited to the rights and remedies set forth in 28 U.S.C. § 1498. STA cannot seek damages against MSI for any product made for and/or used by the United States.

## UNCLEAN HANDS

14.     All or some of STA's claims for relief are barred due to unclean hands.

## ENSNAREMENT

15.     All or some of STA's claims for infringement are barred by the doctrine of ensnarement.

## ACTIONS OF OTHERS

16.     The claims made in the Complaint are barred, in whole or in part, because MSI is not liable for the acts of others over whom it has no control.

## NO CAUSATION

17.     STA's claims against MSI are barred because STA's damages, if any, were not caused by MSI.

## NO INJUNCTIVE RELIEF

18.     STA is not entitled to injunctive relief because any alleged injury to STA is not immediate or irreparable and because STA has an adequate remedy—if any—at law.

## ADDITIONAL DEFENSES

19.     MSI reserves the right to assert any other defenses that discovery may reveal.

**WHEREFORE**, MSI asks this Court to dismiss STA's action against MSI and enter judgment that STA take nothing on its claim against MSI and award MSI its attorneys' fees and costs of defending this action and such other and further relief as it may be entitled.

## <u>COUNTERCLAIMS</u>

Counterclaim Plaintiff MSI hereby alleges the following Counterclaims against Counterclaim Defendants STA, Instant Connect Software LLC ("ICS"), and Dillon Kane Group LLC ("Dillon Kane Group"):

1.     STA's allegations of infringement in its Complaint are baseless. STA's Complaint accuses systems, including MSI's "WAVE 5000 System," that have no relationship at all to the asserted patent claims. STA has repeatedly and steadfastly refused to provide any authority or

ACTIVE/600161479

factual basis for its woefully deficient infringement allegations, and, to this day, has not identified a single document to support its claims.

2.    The reason behind STA's refusal to cite any documents in support of its allegations, including documents that would evidence its understanding of any MSI accused systems, has now become clear. As a result of this lawsuit, MSI learned of a coordinated campaign—involving STA, its affiliates Dillon Kane Group and ICS, and certain of MSI's former employees—to illegally and without authorization take MSI's customers as well as MSI's confidential and trade secret information and use that information against MSI and for the benefit of STA, Dillon Kane Group, and ICS in the marketplace and in this lawsuit.

3.    On information and belief, STA, Dillon Kane Group, and ICS have misused and misappropriated MSI proprietary information in multiple ways. First, on information and belief, STA, Dillon Kane Group, and ICS have extensively used, and continue to extensively use, the misappropriated proprietary MSI information to develop new products, solicit MSI's customers, and gain an unlawful advantage in the marketplace, all on the back of MSI's hard work, investment, and ingenuity.

4.    Second, on information and belief, STA and Dillon Kane Group also used illicitly obtained MSI proprietary information to pursue this lawsuit not based on the merits of any infringement claim but to impermissibly gain further access to MSI's commercially sensitive documents—in order to extort MSI for patent licensing royalties and stifle competition in the marketplace. STA's unreasonable manner of litigating, including refusing to identify a single document to support its claims, reflects the lack of merit and improper intent in bringing and maintaining this lawsuit.

ACTIVE/600161479

5.      MSI brings these Counterclaims to stop STA's, Dillon Kane Group's, and ICS's misconduct and exploitation, both in the marketplace and in this case.

6.      MSI has been a pioneer and global leader in radio equipment, infrastructure, and communication systems for nearly 100 years. In particular, at considerable expense over the course of many years, MSI has leveraged its expertise and ingenuity to develop "push-to-talk" ("PTT") communication systems that enable reliable, real-time communications in mission critical environments. With PTT functionality, a user typically uses a button on a device, such as a two-way radio, to initiate fast, short, and immediate transmissions to other users or groups of users. MSI's PTT functionality is a critical tool for first responders, public safety, military, and other emergency personnel.

7.      For years, MSI has made substantial investments in PTT research and innovation for a wide range of applications, including the development of PTT over broadband applications. PTT over broadband provides the key benefits of PTT while also allowing for interoperable communications between radio devices and other types of devices, such as smartphones. MSI provides one such system under the name WAVE 5000—a system originally accused of infringement and referenced in STA's Complaint.

8.      MSI relies on its trade secrets to guard the valuable intellectual property it owns related to PTT technology, including PTT over broadband. MSI undertakes substantial precautions to ensure that its trade secret information is not misused, including by restricting access to only its trusted employees that have a need for such access. MSI also requires those employees to execute confidentiality and non-solicitation agreements as a condition of their employment.

9.      On information and belief, STA is an affiliate of Dillon Kane Group, a private equity firm in Chicago. In 2018, STA and Dillon Kane Group acquired PTT over broadband

19

functionality called "Instant Connect" (or "IPICS"), and, in 2019, a patent portfolio relating to that functionality, from a third party that was exiting the business. In 2019, the principals of STA and Dillon Kane Group formed ICS, another affiliate of Dillon Kane Group. On information and belief, STA and Dillon Kane Group and their principals and affiliates have owned and continue to own, direct, control, and/or operate ICS and the acquired patent portfolio. On information and belief, Dillon Kane Group, STA, and ICS have shared and continue to share responsibility for the Instant Connect product and work closely together to own, direct, control, and/or operate the Instant Connect business. On information and belief, STA and ICS are under the common control of Dillon Kane Group, such that the same individuals responsible for direction and control of STA— including those associated with the Dillon Kane Group—also are responsible for direction and control of ICS.

10. On information and belief, before STA's and Dillon Kane Group's 2018 acquisition of Instant Connect, neither STA nor Dillon Kane Group nor their managers, officers, employees, or members had experience in PTT systems, and STA and Dillon Kane Group had not invested any labor or capital in researching or innovating such systems. Knowing that they did not have the expertise to develop, market, or sell these products, on information and belief, STA and Dillon Kane Group (and later ICS) decided to embark on a plot to unlawfully take MSI's employees and customers and acquire MSI's confidential and proprietary trade secrets with the intention of revamping the technology STA, Dillon Kane Group, and ICS had acquired, and to build a product to directly and unfairly compete with MSI's successful product offerings, including those employing the MSI WAVE 5000 technology identified in STA's Complaint.

11. Specifically, on information and belief, STA and Dillon Kane Group (and later ICS) unlawfully conspired with disgruntled MSI employees to join forces to gain access to MSI's

ACTIVE/600161479

proprietary information, including highly sensitive technical information, customer intelligence, and business-related strategic information. Among the individuals now closely affiliated with Dillon Kane Group, STA, and ICS are several former MSI employees who held key roles at MSI that relate to MSI's PTT over broadband business and who had extensive access to MSI's relevant proprietary technical information and business intelligence. These individuals include at least Shaun Botha, Derick Clack, Jeff Lucas, Wes Wells, Peter Fritz, and Steve Spanglo (the "Former MSI Employees"). Botha and Clack were key technologists for the WAVE 5000 technology. Wells was responsible for integrating the WAVE 5000 technology with MSI's radios. Spanglo was a Systems Engineer for WAVE 5000. Lucas's responsibilities at MSI related to technical and sales roles in connection with providing WAVE 5000 technology to the U.S. Government, while Fritz's responsibilities related to technical and sales roles in Australia.

12.     During their many years of employment at MSI, the Former MSI Employees worked extensively with highly sensitive and proprietary technical information for MSI's products, including MSI's source code, software, design ideas, product planning, research, development, and technical documentation for WAVE 5000. The Former MSI Employees also had extensive access to MSI's business strategy and intelligence, development plans, customer lists, and customer-specific requests. The Former MSI Employees, however, chose to take this information for their own advantage and, on information and belief, ultimately to advantage Dillon Kane Group, STA, and ICS.

13.     As just one example, while Botha was working at MSI, MSI learned that Botha violated the terms of his employment agreement by using and attempting to independently commercialize MSI's intellectual property. Botha left MSI shortly after MSI confirmed to Botha that MSI owned that intellectual property. However, before departing MSI, Botha set a plan in

motion. On information and belief, frustrated with MSI's claim of ownership and while still employed by MSI, Botha formed a company called FuM Systems LLC ("FuM"), which marketed a product, FuM ONE, that also used MSI's intellectual property. On information and belief, "FuM" is an abbreviation for an expletive, "F u Motorola." On information and belief, unbeknownst to MSI until after the filing of the Complaint in this case, Botha hatched this plan to market and commercialize FuM in collaboration with Dillon Kane Group and STA. After MSI learned of FuM and demanded Botha's return of MSI's confidential and trade secret information, Botha (through his legal representatives) represented to MSI that Botha would cease unlawful use of MSI's trade secrets and destroy all copies of MSI's confidential and trade secret information. MSI reasonably relied on Botha's representations. On information and belief, however, at or around the same time Botha made his representations to MSI, and unbeknownst to MSI until after the filing of the Complaint in this case, Botha and Clack immediately formed a new company, Rally Tactical Systems Inc. ("Rally"), to conspire with at least Dillon Kane Group and STA to provide this same intellectual property to Dillon Kane Group and STA (and later ICS) for use in Dillon Kane Group's, STA's, and ICS's own competing products, without MSI's express or implied consent.

14.    As another example, on information and belief, Dillon Kane Group, STA, and ICS plotted with at least Botha and Lucas, including while Lucas was still employed by MSI, to solicit MSI's customers and attempt to sell products incorporating MSI's intellectual property to MSI's customers, for the benefit of Dillon Kane Group, STA, and ICS, in violation of Botha's and Lucas's contractual duties. On information and belief, Dillon Kane Group, STA, and ICS also conspired with at least Botha and Clack to solicit MSI employees who possessed confidential information, including Lucas, Wells, Fritz, and Spanglo, to depart MSI and join Dillon Kane Group, STA, or ICS, for the benefit of Dillon Kane Group, STA, and ICS, and in violation of Botha's and Clack's

contractual duties. And, on information and belief, Dillon Kane Group, STA, and ICS have also induced at least one other Former MSI Employee, Spanglo, while still employed by MSI, to improperly download and misappropriate trade secret and confidential information relating to WAVE 5000 in the weeks prior to his departure from MSI without MSI's express or implied consent. Many of these documents provide specific technology implementations and contain detailed technical information, providing Dillon Kane Group, STA, and ICS a roadmap for how to implement key features of MSI's products. On information and belief, each of the Former MSI Employees continues to work for, or closely with, Dillon Kane Group, STA, and ICS in improving, revamping, and modifying their PTT product, Instant Connect, to include MSI's trade secrets, and to solicit MSI's customers to purchase that modified product in direct competition with MSI's products, including MSI's WAVE 5000.

15.     On information and belief, at all relevant times, Dillon Kane Group, STA, ICS, and the Former MSI Employees intentionally and deliberately evaded MSI's security measures and hid their wrongful conduct from MSI in an attempt to prevent MSI from learning about their harmful and unlawful activities. Dillon Kane Group, STA, ICS, and the Former MSI Employees, however, knew at all relevant times that their actions were wrongful and that the information they misappropriated was confidential and comprised MSI's trade secret information. And Dillon Kane Group's, STA's, and ICS's acquisition, use, or disclosure of the trade secret information to develop the new Instant Connect product was also deliberate, and continues to be deliberate in the ongoing development, sales, and marketing of the Instant Connect products in the United States.

### THE PARTIES

16.     Motorola Solutions, Inc. ("MSI") is a company organized and existing under the laws of Delaware having a principal place of business at 500 W Monroe St., Chicago, IL 60661.

17.     On information and belief, Dillon Kane Group LLC ("Dillon Kane Group") is a company organized and existing under the laws of Illinois having its principal place of business at 222 S. Riverside Plaza, 28th Floor, Chicago, IL 60606.

18.     On information and belief, STA Group LLC ("STA") is a company organized and existing under the laws of Illinois having its principal place of business at 222 S. Riverside Plaza, 28th Floor, Chicago, IL 60606.

19.     On information and belief, Instant Connect Software LLC ("ICS") is a company organized and existing under the laws of Delaware having its principal place of business at 222 S. Riverside Plaza, 28th Floor, Chicago, IL 60606.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction pursuant to federal question jurisdiction, 28 U.S.C. §§ 1331 and 1338(a), the trade secret laws of the United States, 18 U.S.C. §§ 1836, 1839, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*. This Court also has supplemental jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1367(a) because the federal and state law claims derive from a common nucleus of operative facts.

21.     This Court has personal jurisdiction over STA at least because STA has submitted to the personal jurisdiction of this Court by filing the Complaint.

22.     This Court has specific personal jurisdiction over Dillon Kane Group, STA, and ICS at least in part because Dillon Kane Group, STA and ICS have conducted or currently conduct business in the State of Texas and in this judicial District. On information and belief, Dillon Kane Group, STA, and ICS, directly or through intermediaries, sell, ship, distribute, offer for sale, advertise, or otherwise promote their products—developed using misappropriated trade secrets— in the State of Texas and this judicial District.

24

23.     This Court also has personal jurisdiction over Dillon Kane Group, STA, and ICS because they committed acts of misappropriation in this District and the State of Texas, including because they each directly or through their intermediaries, subsidiaries, divisions, groups, or distributors, advertise, market, use, offer for sale, import for sale, or sell products containing the misappropriated technology in the State of Texas and this District, and place those products in the stream of commerce with the expectation and knowledge that they will be purchased by consumers in the State of Texas and this District.

24.     Moreover, on information and belief, at least Dillon Kane Group, STA, and ICS have formed strategic partnerships in Texas, including a 2022 strategic partnership with EF Johnson Technologies, a company located in Irving, Texas, relating to products containing the misappropriated technology. As a result, Dillon Kane Group, STA, and ICS have intentionally targeted Texas for its business activities and purposefully availed themselves of the benefits of conducting business in Texas, such that they should reasonably anticipate being subject to its laws and the jurisdiction of its courts.

25.     By and through ICS, Dillon Kane Group, STA, and ICS also maintain a commercial website accessible to residents of the State of Texas and this District, through which at least ICS promotes and facilitates sales of products developed using misappropriated trade secrets. For example, ICS's website, https://www.instantconnectnow.com/, directs consumers in the United States, including those in the State of Texas and this judicial District, to purchase ICS's products. Additionally, the website is interactive. It allows users to download an eBook about its product after entering an email address. Moreover, ICS's website links to an "Instant Connect Support Portal" (https://support.instantconnectnow.com/s/) that allows users to create an "Instant Connect Portal Account."

26.     On information and belief, Dillon Kane Group is the principal actor responsible for the actions of STA and ICS and uses its multi-level corporate structure to direct and control the actions of STA and ICS. For example, Dillon Kane Group represents to the public, via its website (https://www.dillonkane.com/portfolio/), that it operates as a "group of affiliated companies," including (a) "Instant Connect…the world's first mission-critical platform seamlessly linking mobile, radio, and enterprise telephony in a single integrated environment…This is 'anytime, anywhere' communications that turns IP devices to push-to-talk radios…"; and (b) "STA Group" which "is the innovation and engineering engine at the heart of Dillon Kane Group's software practice."

27.     Moreover, not only are Dillon Kane Group, STA, and ICS all headquartered at the same physical office in Chicago, Illinois, on information and belief, members of Dillon Kane Group also act officially in "dual hat" roles, both as employees, officers, members, or other affiliates of Dillon Kane Group and in similar roles of Dillon Kane Group "portfolio" companies, including STA and ICS, and the leadership among Dillon Kane Group, STA, and ICS overlaps significantly. *See* https://www.dillonkane.com/about/leadership/; https://www.stagrp.com/about/leadership/; https://www.instantconnectnow.com/about/leadership/. As one such example, founding members and current Senior Managing Partners of Dillon Kane Group, David Dillon and Don Kane, are also identified on STA's website as STA's Senior Managing Directors. As another example, at least Forrest Claypool, identified on Dillon Kane Group's website as a member of "DKG's Leadership," also serves as CEO of ICS, and is also identified on STA's website as a "Senior Managing Director of Dillon Kane Group/STA Group LLC, and Chief Executive Officer of Instant Connect, a business of the STA Group."

28.     The extent to which the leadership overlaps between Dillon Kane Group, STA, and ICS is significant, evidencing the multi-level corporate structure that enables Dillon Kane Group to direct and control STA and ICS. For example, the following people are identified on Dillon Kane Group's and STA's websites as members of both Dillon Kane Group's and STA's leadership: David Dillon, Don Kane, Forrest Claypool, Tom Cumbo, Tracy McLeod, and Michelle Borromeo. Of those, Forrest Claypool, Tracy McLeod, and Michelle Borromeo are also identified on ICS's website as members of ICS's leadership. As another example, on information and belief, at least Rick McNees served as "Chief Revenue Officer" of both Dillon Kane Group and ICS from January 2018 to January 2023. Similarly, on information and belief, at least Mike Kleszynski currently serves as "Managing Director" of both Dillon Kane Group and STA. And Matt Defano currently serves as "Senior Architect / Manager" of STA as well as "Vice President, Engineering" of ICS.

29.     On information and belief, Dillon Kane Group has directed and controlled STA in bringing this Complaint. On information and belief, Dillon Kane Group has reported to the Illinois Secretary of State that its managers and owners include David Dillon, Don Kane, and Thomas Reedy. STA's initial disclosures and discovery in this matter also identify the same individuals, David Dillon, Don Kane, and/or Tom Reedy, as knowledgeable individuals regarding STA's acquisition of the Asserted Patents and regarding STA's allegations of willful infringement.

30.     As another example, on information and belief, Dillon Kane Group has at all times directed and controlled and continues to direct and control STA's and ICS's advertising, marketing, use, offer for sale, importation for sale, or selling of, and placing in the stream of commerce, the Instant Connect product, which uses MSI's trade secrets. For example, ICS's website identifies STA and Dillon Kane Group as having purchased the Instant Connect product

from a third party and modified and developed that product, thereby allowing ICS to sell that product throughout the United States. *See* https://www.instantconnectnow.com/wp-content/uploads/IPICS-End-of-Life-Notice.pdf ("…Instant Connect product line (previously known as IPICS) was sold to the STA Group/Dillon Kane Group on April 4, 2018…"). As such, Dillon Kane Group uses its multi-level corporate structure to actively participate with, control, and manage group activities related to at least the distribution and sale of the Instant Connect product. Dillon Kane Group knew or reasonably could have foreseen that the State of Texas and this District are a termination point of the distribution channel comprising Dillon Kane Group and its affiliated entities, including STA and ICS.

31.     Each of Dillon Kane Group, STA, and ICS, therefore, have committed tortious acts in this District and the State of Texas; have expressly aimed their actions at this District and the State of Texas with the knowledge that they would cause harm and substantial injury to MSI in the District and the State of Texas; and MSI's claims relate to Dillon Kane Group's, STA's, and ICS's products containing technology misappropriated from MSI and advertised, marketed, used, offered for sale, imported, or sold in this District and in the State of Texas.

32.     Thus, Dillon Kane Group, STA, and ICS have established sufficient minimum contacts with the State of Texas and this District, and the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

33.     Additionally, this Court has specific personal jurisdiction over Dillon Kane Group and ICS at least in part due to Dillon Kane Group and/or ICS being a parent, subsidiary, agent, alter ego, partner, related company, predecessor-in-interest, or successor-in-interest to STA over the business operations that sell the ICS products developed using trade secrets misappropriated from MSI. On information and belief, in 2018, Dillon Kane Group and STA purchased and

controlled the business operations responsible for developing and selling Instant Connect products. On information and belief, in 2019, Dillon Kane Group and STA transferred at least some of these assets—the business operations relating to Instant Connect products—to ICS, which now has some role in selling those products developed using MSI's misappropriated trade secrets. On information and belief, Dillon Kane Group and STA and its principals, members, managers, officers, directors, or other affiliates fully own, operate, and/or control ICS. On information and belief, Dillon Kane Group and STA exercise complete control over ICS's business operations such that ICS is a mere instrumentality of Dillon Kane Group and STA. On information and belief, Dillon Kane Group and its principals, members, managers, officers, directors, or other affiliates fully own, operate, and/or control STA as well. On information and belief, Dillon Kane Group exercises complete control over STA's business operations such that STA is a mere instrumentality of Dillon Kane Group.

34.     Venue is proper in this District as to these Counterclaims pursuant to 28 U.S.C. §§ 1391, 1400(b). STA has submitted to the venue of this Court by filing its Complaint here. Venue is also proper because Dillon Kane Group, STA, and ICS have transacted and continue to transact business in this District. Moreover, on information and belief, a substantial part of the events or omissions giving rise to the Counterclaims have occurred in this District. Dillon Kane Group, STA, and ICS have used MSI's trade secrets to craft the meritless Complaint in this matter, to impermissibly gain further access to MSI's commercially sensitive documents in order to extort MSI for patent licensing royalties and stifle competition in the marketplace, and to sell and continue to sell, ship, distribute, offer for sale, market, or advertise their products, developed using MSI's misappropriated trade secrets, in this District.

**FACTUAL BACKGROUND:**
**DILLON KANE GROUP'S, STA'S, AND ICS'S MISAPPROPRIATION OF MSI'S**
**TRADE SECRETS**

**A.**   **MSI's Substantial Investments in Proprietary PTT Over Broadband**
**Technology**

35.   MSI has expended considerable resources to develop and bring to market PTT

communication systems.

36.   MSI provides one such system under the brand name WAVE 5000. WAVE 5000

bridges two-way radio technology with broadband networks for seamless communications in any

location, across smart devices and disparate two-way radio systems. WAVE 5000 includes

numerous proprietary features to implement and enable functionality to provide such seamless

communications across radio and non-radio devices.



**BRIDGING TWO-WAY RADIO WITH BROADBAND NETWORKS**
With WAVE 5000 you can experience game-changing functionality that lets you build and operate secure, highly-scalable solutions for today's most demanding communications environments:

**Extend Radio To Broadband**
Extend workforce communications beyond radio to include modern devices and broadband networks for seamless communications in any location.

**Deploy Broadband PTT**
Secure, 'over-the-top' PTT connecting smart devices over 3/4G LTE and WiFi networks delivers greater choice and flexibility when choosing a non-radio, carrier-independent communications solution.

**Connect Radio to Radio**
Connect multiple, disparate two-way radio systems and remove barriers to communication interoperability and workforce collaboration.

**WAVE 5000 Datasheet**

37.   In addition, MSI provides carefully configured, proprietary WAVE 5000

topologies, unique to different customers. WAVE 5000's configurable design provides several

benefits, including by enabling an almost unlimited number of data streams while maintaining ease

of use and technical sophistication. Underlying the WAVE 5000 system and customer

30

implementations is significant technical know-how and other carefully guarded trade secrets that MSI has developed over the course of many years.

> **BUILDING YOUR WAVE 5000 SYSTEM**
>
> WAVE 5000 is a multi-component software platform and suite of applications for enabling the integration of existing and future communication technologies. The goal is simple – remove the technical barriers to secure instant PTT communication and enable anyone on any device to securely communicate across any IP network with any other device, in real time.
>
> At its core, WAVE enables an almost unlimited number of simultaneous data streams within an IP network.
>
> These streams, some for voice and some for system data, connect users and their devices so that you and your teams can enjoy a truly unified PTT communications environment that provides secure access to people, information and systems that are critical to their role and responsibilities.
>
> The implementation required to meet this goal requires a system with tremendous technical sophistication while maintaining its ease of use and implementation flexibility.

**WAVE 5000 Datasheet**

38.     The design, development, implementation, and enabling technology of WAVE 5000 systems, including the unique WAVE 5000 topologies for MSI customers, comprise MSI's confidential and proprietary technology and trade secrets ("WAVE 5000 Technical Trade Secrets"). WAVE 5000 Technical Trade Secrets include source code, software, design ideas, product planning, research, development, and other technical documentation.

39.     MSI's business strategy and customer intelligence, such as those relating to unique customer topologies for WAVE 5000 systems, also include MSI's confidential and proprietary technology and trade secrets ("WAVE 5000 Business Trade Secrets"). WAVE 5000 Business Trade Secrets include development plans, customer lists, customer-specific requests, client records, accounts receivable documents, business plans, marketing research, and related work product.

40.     In addition to WAVE 5000, MSI's customers approached MSI to build a version of WAVE 5000 that could be used in serverless environments. Over the course of his employment with MSI, at least one Former MSI Employee, Botha, built a prototype to meet MSI's customer-specific needs. Throughout this time, Botha used the extensive resources and investment of MSI, which were entrusted to Botha as part of Botha's employment with MSI, to develop this new

version of the WAVE 5000 system. The design, development, and implementation of the serverless version of WAVE 5000 also incorporated MSI's confidential and proprietary technology and trade secrets ("Serverless WAVE 5000 Trade Secrets"). The Serverless WAVE 5000 Trade Secrets include source code, software, design ideas, product planning, research, development, and technical documentation.

41.     In connection with their roles, each of the Former MSI Employees was privy to at least (a) WAVE 5000 Technical Trade Secrets, (b) WAVE 5000 Business Trade Secrets; and/or (c) Serverless WAVE 5000 Trade Secrets. Each category of confidential and trade secret information derives independent economic value, actual or potential, from not being generally known or ascertainable by others, including providing MSI substantial commercial and technical significance and competitive advantage, economic benefit, and commercial value in the marketplace.

### B.     **MSI Protects Its Trade Secrets**

42.     As a result of its substantial investments and decades-long dedication to innovation, MSI maintains its trade secrets in strict confidence to protect their value and the substantial investments MSI has made to develop them. MSI specifically protects its trade secrets, including at least the WAVE 5000 Technical Trade Secrets, WAVE 5000 Business Trade Secrets, and Serverless WAVE 5000 Trade Secrets, in numerous ways, including by restricting access to only select individuals. Moreover, those individuals are subject to strict confidentiality and non-disclosure agreements.

43.     For example, as a condition of their employment and a part of their executed employment agreements, each of the Former MSI Employees were required to sign confidentiality agreements including provisions, among others, that prohibit the improper use of any MSI

32

confidential information or trade secrets. For example, at least Botha, Clack, and Wells signed agreements, as a condition of their employment, stating:

> **As a condition and in consideration of my employment by Motorola Solutions**, **my being given access to Motorola Solutions' Confidential Information** (as that term is defined below) which I require in order to perform my duties, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, I agree as follows:
> …
> **"Confidential Information" means all confidential information and trade secrets** (whether or not specifically labeled or identified as "confidential"), in any form or medium, that is disclosed to, or developed or learned by me and that relates to the business, products, services, research or development of Motorola Solutions or its suppliers, distributors or customers and that has not become publicly known. As used in this Agreement, Confidential Information includes all "Intellectual Property," which means all non-published patent applications, ideas, inventions, formulae, know-how, devices, designs, models, methods, techniques and processes, specifications, tooling, computer programs, copyrightable works, mask works, technical and product information concerning circuits, trade secrets and all other intellectual property rights.
>
> I recognize that Motorola Solutions is engaged in a continuous program of research and development, and that as an employee, **I will have access to Confidential Information that has independent economic value to Motorola Solutions in part because it is confidential**. I further recognize that Motorola Solutions has taken reasonable steps to protect its Confidential Information from disclosure to the public, including entering into this Agreement. **During and after my employment, I will not disclose or use any Confidential Information except to the extent I am required to disclose or use such Confidential Information in the performance of my assigned duties with Motorola Solutions; and I will use my best efforts to safeguard the Confidential Information and protect it against disclosure, misuse, espionage, loss and theft**. . . .

Motorola Employee Confidentiality and Assignment of Inventions Agreement ("Employment Agreement") (emphases added). All Former MSI Employees signed employment agreements with this provision or substantially similar provisions.

44.     The Employment Agreement further expressly requires, as a condition of employment, that "[a]ll documents and materials, which I have had access to or produced in connection with my services for Motorola Solutions, or which belong to Motorola Solutions, whether or not such materials contain Confidential Information, shall remain the sole property of

ACTIVE/600161479

Motorola Solutions" and that "[u]pon termination, or at any time requested, I shall promptly deliver to Motorola Solutions all such materials and copies in my possession and control and shall provide written confirmation that I have returned all such materials." All Former MSI Employees agreed to this provision or substantially similar provisions.

45.     The Employment Agreement additionally states, as a condition of employment, that each MSI employee must "assign and agree to assign to Motorola Solutions or its designee all right, title and interest" in any "Intellectual Property that relates in whole or in part to Motorola Solutions' business or actual or demonstrably anticipated research or development" and to "both during and after my employment, cooperate with Motorola Solutions, at its reasonable expense, to protect Motorola Solutions' interests in such Intellectual Property." Moreover, each employee agrees that "any Intellectual Property related to Motorola Solutions' business or research or development, and that is created, conceived or reduced to practice" during the term of employment and for a period of six months after termination "will be presumed to have been conceived or made during the period of my employment with Motorola Solutions, unless and until established to the contrary by me." All Former MSI Employees agreed to this provision or substantially similar provisions. And at least Botha, Clack, Wells, Lucas, and Spanglo agreed during the term of employment and for a period of 12 months after termination of employment not to "directly or indirectly, recruit, solicit or induce . . . (i) any employee of Motorola Solutions who possess Confidential Information to leave the employ of Motorola Solutions [and]/or (ii) any other person to terminate a relationship with Motorola Solutions." All these provisions help safeguard MSI's confidential and trade secret information.

46.     In addition, as part of the termination of their employment with MSI, at least Botha, Clack, Lucas, and Wells signed an Acknowledgement of Continuing Obligations Under Any

ACTIVE/600161479

Agreements Related to Confidential Information ("Continuing Obligations Agreement"). The Continuing Obligations Agreement repeated the same definition of Confidential Information and Intellectual Property as the Employment Agreement that the Former MSI Employees signed. And under the Continuing Obligations Agreement, the former employees "acknowledge[d] again these important obligations to Motorola Solutions and further agree to continue to abide by all obligations set forth in any agreements related to Confidential Information, including the agreement you signed with the Company at the beginning of your employment."

47.     In addition to employment agreements, MSI also requires confidentiality from its customers. Regarding the WAVE 5000 technology, as part of an end-user's license agreement, the customer must agree that WAVE 5000 software constitutes valuable proprietary information including MSI's trade secrets and copyrights. The customer must also agree to preserve the confidentiality of the software and to cease all use of the software and associated documentation and return or destroy all copies of the software and associated documentation upon termination of the license.

48.     MSI strictly enforces these confidentiality agreements. As just one example, when MSI learned that Botha, after leaving his employment with MSI, violated the terms of his employment agreement by using and attempting to commercialize MSI's Serverless WAVE 5000 Trade Secrets at FuM, MSI acted swiftly to protect the confidentiality of the material. MSI, via its attorneys, demanded Botha's compliance with his confidentiality obligations under the employment agreements, demanded the return of the confidential and trade secret information, and sought extensive assurances that Botha would discontinue his unlawful misappropriation.

49.     In response, Botha, via his attorneys, assured MSI that he would comply fully with MSI's requests, stating that he would return MSI's property and cease his unlawful use. However,

ACTIVE/600161479

despite giving these assurances, and unbeknownst to MSI at the time, he did the opposite. Indeed, since STA filed its Complaint, MSI has learned that, at the same time that Botha agreed to honor his obligations, return MSI's property, cease unlawful use of MSI's trade secrets, and dissolve his company, FuM, Botha had already been surreptitiously collaborating and conspiring with at least Dillon Kane Group, STA, and other Former MSI Employees (some of whom were then still employed by MSI) to continue to misappropriate MSI's trade secrets and unfairly compete and interfere with MSI's business. On information and belief, within weeks of providing assurances to MSI that the conduct would be discontinued and MSI's proprietary information returned, at least Botha and Clack had formed a new company, Rally, and continued to supply Dillon Kane Group and STA (and later ICS) with MSI's trade secrets so that Dillon Kane Group, STA, and ICS could develop a product to unlawfully and unfairly compete with MSI, as well as continue to solicit MSI employees and customers.

### C.  Dillon Kane Group, STA, and ICS Misappropriated MSI's Trade Secrets

50.    By the time that Dillon Kane Group and STA acquired a version of PTT over broadband technology in 2018, MSI had already developed and/or commercialized several proprietary PTT over broadband technologies and systems, including WAVE 5000. Dillon Kane Group and STA did not have any such know-how or expertise at that time. On information and belief, faced with the challenge of improving technology it had just acquired, and in order to compete with MSI, Dillon Kane Group and STA (and later ICS) attempted to overcome this knowledge gap by unlawfully inducing or recruiting senior MSI engineers and business people to provide Dillon Kane Group, STA, and ICS access to MSI's customers and to MSI's valuable trade secret information, including at least the WAVE 5000 Technical Trade Secrets, WAVE 5000 Business Trade Secrets, and Serverless WAVE 5000 Trade Secrets. On information and belief,

ACTIVE/600161479

Dillon Kane Group, STA, and ICS then used this information to revamp their new product line and unfairly compete with MSI in the marketplace.

51.     On information and belief, at all relevant times, Dillon Kane Group, STA, and ICS enlisted the help of the Former MSI Employees despite knowing them to be then-current or former employees of MSI having access to MSI's trade secrets and confidential information, including the WAVE 5000 Technical Trade Secrets, WAVE 5000 Business Trade Secrets, and Serverless WAVE 5000 Trade Secrets, and further knowing that those Former MSI Employees owed confidentiality, assignment, and/or non-solicitation obligations to MSI. Indeed, on information and belief, Dillon Kane Group, STA, and ICS intentionally leveraged this access to acquire, use, or disclose MSI's trade secrets and, specifically and intentionally, instructed the Former MSI Employees to incorporate MSI trade secrets and confidential information into, among other things, Dillon Kane Group's, STA's, and ICS's Instant Connect products and business strategies.

52.     On information and belief, Dillon Kane Group, STA, and ICS conspired with one or more of the Former MSI Employees to misappropriate MSI's trade secrets, solicit MSI's customers, solicit the departure of other MSI employees, carry away confidential information, impermissibly gain further access to MSI's commercially sensitive documents in order to extort MSI for patent licensing royalties, stifle competition in the marketplace, and unfairly compete with MSI.

53.     As discussed herein, Dillon Kane Group, STA, and ICS knew or had reason to know that their knowledge, acquisition, or use of MSI's trade secrets came from MSI, that their employees' knowledge, acquisition, or use of MSI's trade secrets came from MSI, and that their employees had previously acquired MSI's trade secrets by virtue of employer-employee relationships and employment agreements, all of which created a duty to keep MSI's trade secrets

ACTIVE/600161479

confidential. Thus, Dillon Kane Group, STA, and ICS are directly liable for their acquisition, use, and disclosure of MSI's trade secrets.

54.     Alternately, at least some of the Former MSI Employees used and disclosed MSI's trade secrets within the scope of their employment for Dillon Kane Group, STA, and ICS and for the benefit of Dillon Kane Group, STA, and ICS. Their actions in using and disclosing MSI's trade secrets were an outgrowth of their employment and inherent in the working environment because Dillon Kane Group, STA, and ICS hired them specifically to design, improve, and revamp the Instant Connect product using MSI's trade secrets, without its consent, to directly and unfairly compete with MSI's products, including WAVE 5000. The Former MSI Employees' actions were at least typical and broadly incidental to Dillon Kane Group's, STA's, and ICS's business of developing and commercializing Instant Connect. The Former MSI Employees' actions were at least generally foreseeable as part of their duties to develop and commercialize Instant Connect. As a result, Dillon Kane Group, STA, and ICS are alternatively liable for their employees' actions under the doctrine of respondeat superior.

55.     At all relevant times, MSI had no reasonable notice and no reason to suspect the unlawful activities of Dillon Kane Group, STA, ICS, or the Former MSI Employees. On information and belief, Dillon Kane Group, STA, and ICS and the Former MSI Employees concealed these activities to try to gain an economic benefit, competitive advantage, or commercial value, or to accomplish an exploitative purpose, including assisting with and accelerating their research and development of their competitive product, from the misappropriation of MSI's confidential information and trade secrets.

    1.   **Dillon Kane Group's, STA's, and ICS's Acquisition and Use of WAVE 5000 Technical Trade Secrets**

56.     For example, on information and belief, Dillon Kane Group, STA, and ICS unlawfully and with improper means acquired MSI's WAVE 5000 Technical Trade Secrets from the Former MSI Employees, both during and after their employment with MSI, and used the WAVE 5000 Technical Trade Secrets to develop Dillon Kane Group's, STA's, and ICS's revamped Instant Connect product.

57.     On information and belief, Dillon Kane Group, STA, and ICS specifically and intentionally recruited, as employees, agents, affiliates, or consultants, the Former MSI Employees—including at least Botha, Clack, Lucas, Wells, Fritz, and Spanglo—who were directly involved in developing and integrating the WAVE 5000 technology and were intimately knowledgeable of the implementation of MSI's proprietary features and the WAVE 5000 Technical Trade Secrets. Botha served as Fellow, Technical Staff at MSI with direct responsibilities relating to WAVE 5000, and Clack was MSI's Director, Engineering and a software architect for WAVE 5000. Wells was MSI's Project Manager for WAVE 5000 working on a proprietary interface between WAVE 5000 and MSI's two-way radios. Lucas worked on interoperability issues with WAVE 5000, and Spanglo was a System Engineer for WAVE 5000. Their responsibilities included coding, documentation, testing, and release of software for WAVE 5000.

58.     These Former MSI Employees, therefore, had access to MSI confidential information and trade secrets, including, for example, the WAVE 5000 Technical Trade Secrets. On information and belief, through these Former MSI Employees, Dillon Kane Group, STA, and ICS acquired and used, and continue to acquire and use, the WAVE 5000 Technical Trade Secrets. Specifically, on information and belief, Dillon Kane Group, STA, and ICS instructed the Former MSI Employees, either as employees, agents, affiliates, or consultants, to work on the same

39

technologies as they did at MSI, but using MSI's trade secrets through improper means, and for the benefit of Dillon Kane Group, STA, and ICS. On information and belief, Dillon Kane Group, STA, ICS, and the Former MSI Employees have also intentionally concealed their unlawful activity from MSI.

59.     For example, on information and belief, in 2019, Botha and Clack surreptitiously formed Rally, with the intent to provide Dillon Kane Group, STA, and ICS extensive access to MSI's trade secrets for use in Dillon Kane Group's, STA's, and ICS's new and revamped product. MSI recently discovered that Dillon Kane Group, STA, and ICS now incorporate Rally's so-called "RallyPoint" technology, which, on information and belief, uses by improper means extensive proprietary and confidential information and MSI's trade secrets, including the WAVE 5000 Technical Trade Secrets, in each and every Instant Connect product provided or sold by Dillon Kane Group, STA, or ICS.

60.     As another example, on information and belief, Dillon Kane Group, STA, and/or ICS directly employ at least Lucas, Wells, Fritz, and Spanglo to work on the same technologies as they did at MSI. Wells is a Product Manager and Lucas and Fritz are Directors at Dillon Kane Group, STA, and/or ICS, responsible for developing and commercializing the Instant Connect product. On information and belief, Wells, Lucas, and Fritz, in coordination with at least Botha, Clack, and Spanglo, use by improper means the same technology that comprises MSI's trade secrets, including the WAVE 5000 Technical Trade Secrets. Indeed, in 2021, just weeks before leaving MSI to begin work at or with Dillon Kane Group, STA, and/or ICS, Spanglo downloaded dozens of technical, marketing, and sales documents relating to MSI's WAVE 5000 technology. These highly confidential and sensitive documents, some of which include detailed technical specifications and schematics related to MSI's proprietary technology, included at least the WAVE

ACTIVE/600161479

5000 Technical Trade Secrets. For example, the accessed and downloaded documents include extensive software and documentation for WAVE 5000, including WAVE 5000 servers and clients; detailed technical requirements, functions, and operation for MSI's WAVE 5000 technology; and confidential documentation and topologies relating to testing and deploying various configurations of MSI's WAVE 5000 technology at customer premises. At least since Spanglo acquired these documents in 2021, Dillon Kane Group, STA, and ICS have continued their unlawful activity by incorporating MSI's trade secrets, including the WAVE 5000 Technical Trade Secrets, into Dillon Kane Group's, STA's, and ICS's Instant Connect products currently sold in the United States.

61.     As yet another example, on information and belief, Dillon Kane Group and STA used MSI's trade secrets, including the WAVE 5000 Technical Trade Secrets, to craft STA's meritless Complaint in this case and to impermissibly gain further access to MSI's commercially sensitive documents in order to extort MSI for patent licensing royalties and stifle competition in the marketplace.

62.     Dillon Kane Group, STA, and ICS knew, had reason to know, or should have known that the WAVE 5000 Technical Trade Secrets were acquired through improper means, including through breach of the duty of each of the Former MSI Employees to maintain the secrecy of the information. On information and belief, the Former MSI Employees informed Dillon Kane Group, STA, and ICS of their confidentiality obligations to MSI, or Dillon Kane Group, STA, and ICS otherwise had reason to know about such confidentiality obligations. Despite this, Dillon Kane Group, STA, and ICS unlawfully used the WAVE 5000 Technical Trade Secrets, without MSI's express or implied consent.

2. __Dillon Kane Group's, STA's, and ICS's Acquisition and Use of WAVE 5000 Business Trade Secrets__

63.     As another example, Dillon Kane Group, STA, and ICS unlawfully and with improper means acquired MSI's WAVE 5000 Business Trade Secrets from the Former MSI Employees and used the WAVE 5000 Business Trade Secrets to sell and market Dillon Kane Group's, STA's, and ICS's revamped Instant Connect product.

64.     For example, on information and belief, Lucas, while still an employee of MSI, and Botha, during the 12-month period after he left MSI, unlawfully, and in direct breach of their employment agreements, surreptitiously conspired with Dillon Kane Group, STA, and ICS to hold meetings with at least one MSI customer and used MSI's WAVE 5000 Business Trade Secrets to try to sell products of Dillon Kane Group, STA, and/or ICS to MSI's customer. On information and belief, Lucas and Botha acquired and use and continue to use MSI's WAVE 5000 Business Trade Secrets in the commercialization of Instant Connect for the benefit of Dillon Kane Group, STA, and ICS.

65.     As another example, of the documents Spanglo downloaded in 2021, many include planning, requirements gathering, business strategy, and other information relating to WAVE 5000 customers that constitute MSI's WAVE 5000 Business Trade Secrets. At least since Spanglo acquired these documents, on information and belief, Dillon Kane Group, STA, and ICS have continued their unlawful activity by incorporating MSI's trade secrets into Dillon Kane Group's, STA's, and ICS's Instant Connect business strategies and customer deployments in the United States.

66.     As yet another example, on information and belief, Dillon Kane Group and STA used MSI's trade secrets, including the WAVE 5000 Business Trade Secrets, to craft STA's meritless Complaint in this case and to impermissibly gain further access to MSI's commercially

sensitive documents in order to extort MSI for patent licensing royalties and stifle competition in the marketplace.

67.     Dillon Kane Group, STA, ICS, and the Former MSI Employees have also intentionally concealed all of this unlawful activity from MSI.

68.     Dillon Kane Group, STA, and ICS knew, had reason to know, or should have known that the WAVE 5000 Business Trade Secrets were acquired through improper means, including breach of the duty of each of the Former MSI Employees to maintain the secrecy of the information. On information and belief, the Former MSI Employees informed Dillon Kane Group, STA, and ICS of their confidentiality obligations to MSI, or Dillon Kane Group, STA, and ICS otherwise knew, had reason to know, or should have known about such confidentiality obligations. Despite this, Dillon Kane Group, STA, and ICS unlawfully used the WAVE 5000 Business Trade Secrets, without MSI's express or implied consent.

**3.     Dillon Kane Group's, STA's and ICS's Acquisition and Use of Serverless WAVE 5000 Trade Secrets**

69.     As another example, Dillon Kane Group, STA, and ICS unlawfully and with improper means acquired MSI's Serverless WAVE 5000 Trade Secrets from the Former MSI Employees and used the Serverless WAVE 5000 Trade Secrets to sell and market Dillon Kane Group's, STA's, and ICS's revamped Instant Connect product.

70.     On information and belief, Dillon Kane Group, STA, and ICS specifically and intentionally induced at least Botha and Clack, who were directly involved in developing MSI's Serverless WAVE 5000 Trade Secrets, to work with Dillon Kane Group, STA, and ICS. On information and belief, through at least Botha and Clack, Dillon Kane Group, STA, and ICS acquired and used and continue to acquire and use, the Serverless WAVE 5000 Trade Secrets.

ACTIVE/600161479

Dillon Kane Group, STA, ICS, and the Former MSI Employees have also intentionally and unlawfully concealed their unlawful activity from MSI.

71.     For example, on information and belief, in 2019, Botha and Clack formed Rally, with the intent to provide Dillon Kane Group, STA, and ICS extensive access to MSI's trade secrets, including the Serverless WAVE 5000 Trade Secrets, for use in Dillon Kane Group's, STA's, and ICS's new and revamped product. MSI recently discovered that Dillon Kane Group, STA, and ICS now incorporate Rally's so-called "RallyPoint" technology, which, on information and belief, uses MSI's Serverless WAVE 5000 Trade Secrets with MSI's consent. Indeed, on information and belief, Dillon Kane Group, STA, and ICS market the revamped Instant Connect product with RallyPoint as the first serverless PTT system, while knowing that the Instant Connect product was developed based on and using MSI's Serverless WAVE 5000 Trade Secrets.

72.     Dillon Kane Group, STA, and ICS knew, had reason to know, or should have known that the Serverless WAVE 5000 Trade Secrets were acquired through improper means, including a breach of the duty of each of the Former MSI Employees to maintain the secrecy of the information. On information and belief, the Former MSI Employees informed Dillon Kane Group, STA, and ICS of their confidentiality obligations to MSI, or Dillon Kane Group, STA, and ICS otherwise knew, had reason to know, or should have known about such confidentiality obligations. Despite this, Dillon Kane Group, STA, and ICS unlawfully acquired or used the Serverless WAVE 5000 Trade Secrets, without MSI's express or implied consent.

## COUNT I

### Declaratory Judgment of Noninfringement of U.S. Patent No. 8,014,324

73.     MSI incorporates and re-alleges each and every allegation above as though fully set forth herein.

ACTIVE/600161479

74.     STA has alleged that it owns all substantial right, title, and interest in the '324 patent. STA purports to allege that MSI infringes the '324 patent, although STA has failed to state a claim of infringement upon which relief can be granted and has failed to identify any basis for its infringement allegations regarding the '324 patent.

75.     MSI has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '324 patent. The accused products do not satisfy numerous limitations of each claim of the '324 patent, either literally or under the doctrine of equivalents.

76.     An actual and justiciable controversy exists between MSI and STA concerning MSI's noninfringement of the '324 patent.

77.     MSI is entitled to a judgment from this Court that it has not infringed and does not infringe, directly or indirectly, any claim of any of the '324 patent.

## COUNT II

## Declaratory Judgment of Invalidity of U.S. Patent No. 8,014,324

78.     MSI incorporates and re-alleges each and every allegation above as though fully set forth herein.

79.     STA purports to allege in the Complaint that MSI infringes the '324 patent, although STA has failed to state a claim of infringement upon which relief can be granted and has failed to identify any basis for its infringement allegations regarding the '324 patent.  As a result of at least the allegations contained in the Complaint, an actual and justiciable controversy exists between MSI and STA concerning the validity of the '324 patent.

80.     The '324 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 101, 102, 103, 112, 116, and 120.

81.     MSI is entitled to a judgment from this Court that the claims of the '324 patent are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 101, 102, 103, 112, 116, and 120.

## COUNT III

### Declaratory Judgment of Noninfringement of U.S. Patent No. 8,145,249

82.     MSI incorporates and re-alleges each and every allegation above as though fully set forth herein.

83.     STA has alleged that it owns all substantial right, title, and interest in the '249 patent. STA purports to allege that MSI infringes the '249 patent, although STA has failed to state a claim of infringement upon which relief can be granted and has failed to identify any basis for its infringement allegations regarding the '249 patent.

84.     MSI has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '249 patent. The accused products do not satisfy numerous limitations of each claim of the '249 patent, either literally or under the doctrine of equivalents.

85.     An actual and justiciable controversy exists between MSI and STA concerning MSI's noninfringement of the '249 patent.

86.     MSI is entitled to a judgment from this Court that it has not infringed and does not infringe, directly or indirectly, any claim of any of the '249 patent.

## COUNT IV

### Declaratory Judgment of Invalidity of U.S. Patent No. 8,145,249

87.     MSI incorporates and re-alleges each and every allegation above as though fully set forth herein.

46

88.     STA purports to allege in the Complaint that MSI infringes the '249 patent, although STA has failed to state a claim of infringement upon which relief can be granted and has failed to identify any basis for its infringement allegations regarding the '249 patent.  As a result of at least the allegations contained in the Complaint, an actual and justiciable controversy exists between MSI and STA concerning the validity of the '249 patent.

89.     The '249 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 101, 102, 103, 112, 116, and 120.

90.     MSI is entitled to a judgment from this Court that the claims of the '249 patent are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 101, 102, 103, 112, 116, and 120.

## COUNT V

### Declaratory Judgment of Noninfringement of U.S. Patent No. 9,049,737

91.     MSI incorporates and re-alleges each and every allegation above as though fully set forth herein.

92.     STA has alleged that it owns all substantial right, title, and interest in the '737 patent. STA purports to allege that MSI infringes the '737 patent, although STA has failed to state a claim of infringement upon which relief can be granted and has failed to identify any basis for its infringement allegations regarding the '737 patent.

93.     MSI has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '737 patent. The accused products do not satisfy numerous limitations of each claim of the '737 patent, either literally or under the doctrine of equivalents.

94.     An actual and justiciable controversy exists between MSI and STA concerning MSI's noninfringement of the '737 patent.

ACTIVE/600161479

95.      MSI is entitled to a judgment from this Court that it has not infringed and does not infringe, directly or indirectly, any claim of any of the '737 patent.

## COUNT VI

### Declaratory Judgment of Invalidity of U.S. Patent No. 9,049,737

96.      MSI incorporates and re-alleges each and every allegation above as though fully set forth herein.

97.      STA purports to allege in the Complaint that MSI infringes the '737 patent, although STA has failed to state a claim of infringement upon which relief can be granted and has failed to identify any basis for its infringement allegations regarding the '737 patent.  As a result of at least the allegations contained in the Complaint, an actual and justiciable controversy exists between MSI and STA concerning the validity of the '737 patent.

98.      The '737 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 101, 102, 103, 112, 116, and 120.

99.      MSI is entitled to a judgment from this Court that the claims of the '737 patent are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 101, 102, 103, 112, 116, and 120.

## COUNT VII

### Declaratory Judgment of Noninfringement of U.S. Patent No. 9,319,852

100.      MSI incorporates and re-alleges each and every allegation above as though fully set forth herein.

101.      STA has alleged that it owns all substantial right, title, and interest in the '852 patent. STA purports to allege that MSI infringes the '852 patent, although STA has failed to state

48

a claim of infringement upon which relief can be granted and has failed to identify any basis for its infringement allegations regarding the '852 patent.

102.    MSI has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '852 patent. The accused products do not satisfy numerous limitations of each claim of the '852 patent, either literally or under the doctrine of equivalents.

103.    An actual and justiciable controversy exists between MSI and STA concerning MSI's noninfringement of the '852 patent.

104.    MSI is entitled to a judgment from this Court that it has not infringed and does not infringe, directly or indirectly, any claim of any of the '852 patent.

**COUNT VIII**

**Declaratory Judgment of Invalidity of U.S. Patent No. 9,319,852**

105.    MSI incorporates and re-alleges each and every allegation above as though fully set forth herein.

106.    STA purports to allege in the Complaint that MSI infringes the '852 patent, although STA has failed to state a claim of infringement upon which relief can be granted and has failed to identify any basis for its infringement allegations regarding the '852 patent.  As a result of at least the allegations contained in the Complaint, an actual and justiciable controversy exists between MSI and STA concerning the validity of the '852 patent.

107.    The '852 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 101, 102, 103, 112, 116, and 120.

108.    MSI is entitled to a judgment from this Court that the claims of the '852 patent are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 101, 102, 103, 112, 116, and 120.

ACTIVE/600161479

## COUNT IX

### Trade Secret Misappropriation Under
### the Defend Trade Secrets Act (18 U.S.C. §1836 *et seq.*)

109.    MSI incorporates and re-alleges each and every allegation above as though fully set forth herein.

110.    MSI is the owner of valuable trade secrets relating to PTT over broadband, including at least the WAVE 5000 Technical Trade Secrets, WAVE 5000 Business Trade Secrets, and Serverless WAVE 5000 Trade Secrets, including as described herein. These trade secrets are related to MSI's products and services that are currently used in, or intended for use in, interstate commerce. These confidential and proprietary trade secrets have substantial and independent economic value and have conferred an economic benefit, competitive advantage, or other commercial value on MSI.

111.    By way of example, MSI's PTT over broadband products, including at least WAVE 5000, are marketed and sold throughout the United States.

112.    The Former MSI Employees gained access to MSI's trade secrets—including WAVE 5000 Technical Trade Secrets, WAVE 5000 Business Trade Secrets, and Serverless WAVE 5000 Trade Secrets—in the course of their employment at MSI. This access was gained under a duty of confidentiality, including under contractual employment and confidentiality agreements between MSI and the Former MSI Employees.

113.    By way of or through the Former MSI Employees' unlawful misappropriation, Dillon Kane Group, STA, and ICS knowingly and through improper means acquired, used, or disclosed MSI's trade secrets—including at least MSI's WAVE 5000 Technical Trade Secrets, WAVE 5000 Business Trade Secrets, and Serverless WAVE 5000 Trade Secrets—through multiple, separate acts of misappropriation, as described herein. For example, Dillon Kane Group,

STA, and ICS, working in concert with and/or in control of, or by inducing, the Former MSI Employees, acquired MSI's trade secrets, used MSI's trade secrets against MSI, and disclosed MSI's trade secrets in connection with trying to sell a competitive technology to MSI's WAVE 5000 system.

114. Dillon Kane Group, STA, and ICS misappropriated MSI's trade secrets, including WAVE 5000 Technical Trade Secrets, WAVE 5000 Business Trade Secrets, and Serverless WAVE 5000 Trade Secrets, at least by virtue of acquiring the trade secrets from the Former MSI Employees with knowledge or reason to know that the trade secrets were acquired by improper means. Dillon Kane Group, STA, and ICA at least acquired the trade secrets through inducing the Former MSI Employees to breach their duty to maintain the secrecy of the trade secrets, and who did in fact use their knowledge of MSI's trade secrets given their prior positions at MSI to aid in Dillon Kane Group's, STA's, and ICS's acts of misappropriation. At the time that Dillon Kane Group, STA, and ICS acquired MSI's trade secrets, they were aware of the circumstances and improper means under which these trade secrets were obtained by and from the Former MSI Employees and the duty of confidentiality arising from such circumstances.

115. Dillon Kane Group, STA, and ICS likewise have misappropriated MSI's trade secrets, including WAVE 5000 Technical Trade Secrets, WAVE 5000 Business Trade Secrets, and Serverless WAVE 5000 Trade Secrets, at least by virtue of disclosing or using the trade secrets against MSI, and without MSI's consent, by developing competitive technology and engaging in efforts to steal MSI's customers.

116. On information and belief, Dillon Kane Group and STA have likewise used MSI's confidential and trade secret information, including WAVE 5000 Technical Trade Secrets, WAVE 5000 Business Trade Secrets, and/or Serverless WAVE 5000 Trade Secrets, to craft its meritless

51

Complaint against MSI in this case and to impermissibly gain further access to MSI's commercially sensitive documents in order to extort MSI for patent licensing royalties and stifle competition in the marketplace.

117.   Dillon Kane Group, STA, and ICS knew or had reason to know—and were presumably motivated by their knowledge of—the Former MSI Employees' roles at MSI and their knowledge of MSI's trade secrets, and that the misappropriated trade secrets were acquired under a duty to maintain the secrecy or limit the use of the trade secret in connection with those roles, or derived from or through the Former MSI Employees, who owed a duty to MSI to maintain the secrecy or limit the use of the trade secrets.

118.   On information and belief, Dillon Kane Group's, STA's, and ICS's misappropriation has been willful and malicious, including because Dillon Kane Group, STA, and ICS induced at least the Former MSI Employees to switch sides and deliberately use MSI's highly sensitive information and strategies, including WAVE 5000 Technical Trade Secrets, WAVE 5000 Business Trade Secrets, and Serverless WAVE 5000 Trade Secrets, against MSI as a tool to unfairly compete with MSI, steal MSI's customers, procure investments, and, through this lawsuit, extract undue royalties from MSI.

119.   MSI has taken reasonable steps to maintain the secrecy of its trade secrets, including by restricting access to this information, requiring personnel to sign confidentiality agreements, policing unusual activity relating to access to confidential information, and placing this information under protective order protection when portions of it are produced in litigation.

120.   Dillon Kane Group's, STA's, and ICS's trade secret misappropriation arises out of the same transaction or occurrence as the claim that STA asserts for MSI's alleged infringement of STA patents. Underlying both claims are facts related to, for example, the operation of MSI's

PTT over broadband products, including WAVE 5000, and STA's bringing or maintaining this lawsuit in bad faith.

121.    MSI has been harmed by the multiple and separate acts of trade secret misappropriation of Dillon Kane Group, STA, and ICS. MSI has suffered damages based on Dillon Kane Group's, STA's, and ICS's misappropriation and their resulting interference in interstate commerce with respect to the competing PTT over broadband products and services. Moreover, on information and belief, Dillon Kane Group, STA, and ICS intentionally concealed their wrongful conduct from MSI. Only since STA filed its Complaint did MSI learn or have reason to learn of the injury that Dillon Kane Group's, STA's, and ICS's unlawful actions caused.

122.    MSI stands to suffer future harm as well from continued interference or lost business. Further, Dillon Kane Group, STA, and ICS have been unjustly enriched through their misconduct and will be further unjustly enriched in the future. This includes irreparable harm for which there is no adequate remedy at law.

## COUNT X

### Tortious Interference with Contract

123.    MSI incorporates and re-alleges each and every allegation above as though fully set forth herein.

124.    Each of the Former MSI Employees entered into valid and enforceable contracts with MSI in the course of their employment, including the aforementioned Employment Agreement and Continuing Obligations Agreement.

125.    On information and belief, Dillon Kane Group, STA, and ICS were aware of the employment agreements and obligations to MSI each Former MSI Employee had with MSI.

53

126.    On information and belief, Dillon Kane Group, STA, and ICS acted willfully and intentionally and in an unjustified manner to induce each Former MSI Employee to breach his contractual obligations owed to MSI.

127.    For example, on information and belief, at the encouragement of Dillon Kane Group, STA, and ICS, at least Botha and Lucas have each breached their employment agreements by violating at least the non-solicitation provision of those agreements because they "directly or indirectly, recruit[ed], solicit[ed] or induce[d] . . . (ii) any other person to terminate a relationship with Motorola Solutions," such as one or more of MSI's customers, within 12 months of their employment termination. On information and belief, at the encouragement of Dillon Kane Group, STA, and ICS, one or more of the Former MSI Employees have each breached their employment agreements by violating at least the non-solicitation provision of those agreements because they "directly or indirectly, recruit[ed], solicit[ed] or induce[d] . . . (i) any employee of Motorola Solutions who possess Confidential Information to leave the employ of Motorola Solutions," such as one or more of the other Former MSI Employees, within 12 months of their employment termination.

128.    Separately, and in addition, on information and belief, at the encouragement of Dillon Kane Group, STA, and ICS, at least Botha breached his employment agreement by violating at least the assignment provision because he failed to assign to MSI all Intellectual Property "created, conceived or reduced to practice" during the term of his employment and within six months after termination. Instead, Botha used MSI's intellectual property against MSI and for the benefit of Dillon Kane Group, STA, and ICS.

129.    Dillon Kane Group's, STA's, and ICS's tortious interference with these contractual provisions arises out of the same transaction or occurrence as the claim that STA asserts for MSI's

alleged infringement of STA patents. Underlying both claims are facts related to, for example, the operation of MSI's PTT over broadband products, including WAVE 5000.

130.     MSI has suffered injury and Dillon Kane Group, STA, and ICS have been unjustly enriched as MSI suffered financial losses from Dillon Kane Group's, STA's, and ICS's competing Instant Connect product. Dillon Kane Group's, STA's, and ICS's interference with MSI's employee contracts was the proximate cause of this financial loss.

131.     At all relevant times, MSI had no reasonable notice of and no reason to suspect the wrongful conduct of Dillon Kane Group, STA, ICS, or the Former MSI Employees, which is inherently undiscoverable. Moreover, on information and belief, Dillon Kane Group, STA, and ICS intentionally concealed their wrongful conduct from MSI. Only since STA filed its Complaint did MSI learn or have reason to learn of the injury that Dillon Kane Group's, STA's, and ICS's unlawful actions caused.

## COUNT XI

### Tortious Interference with Prospective Business Relationship

132.     MSI incorporates and re-alleges each and every allegation above as though fully set forth herein.

133.     MSI has contractual relationships with numerous customers, including customers in the federal government.

134.     Dillon Kane Group, STA, and ICS knew, have known, or should have known that MSI routinely enters new contracts with its customers, including customers in the federal government, including for services related to PTT over broadband. Therefore, Dillon Kane Group, STA, and ICS knew, have known, or should have known that that there is a reasonable probability that MSI and its customers, including customers in the federal government, will enter into

ACTIVE/600161479

additional contractual relationships providing for additional services related to MSI's PTT over broadband.

135.   On information and belief, Dillon Kane Group, STA, and ICS have purposely interfered with MSI's valid business relationships to prevent the fulfillment of MSI's legitimate expectancy to enter additional contractual relationships. For example, as set forth above, Dillon Kane Group, STA, and ICS have tortiously interfered with MSI's contracts with the Former MSI Employees by encouraging at least Botha and/or Lucas to violate at least the non-solicitation and/or assignment provisions of their Employment Agreements. Dillon Kane Group, STA, and ICS have committed these acts intentionally and willfully to interfere with MSI's existing or prospective relationships with MSI customers, including customers in the federal government.

136.   As a result of Dillon Kane Group's, STA's, and ICS's actions, Dillon Kane Group, STA, and ICS have actually prevented MSI's legitimate expectancy to enter additional contractual relationships with its customers. On information and belief, Dillon Kane Group's, STA's, and ICS's tortious or unlawful acts have, for example, led MSI customers to purchase the Instant Connect product instead of MSI products. For example, Dillon Kane Group, STA, and ICS identify all United States military branches as existing customers of Instant Connect on their website (https://www.instantconnectnow.com/customers/). Dillon Kane Group's, STA's, and ICS's conduct was performed with a conscious desire to prevent MSI from forming or continuing a relationship with these customers by selling MSI's own products, including at least WAVE 5000, or, at least, Dillon Kane Group, STA, and ICS knew that the interference was certain or substantially certain to occur as a result of their conduct.

137.   Dillon Kane Group's, STA's, and ICS's tortious interference with contract arises out of the same transaction or occurrence as the claim that STA asserts for MSI's alleged

infringement of STA patents. Underlying both claims are facts related to, for example, the operation of MSI's PTT over broadband products, including WAVE 5000, and STA's bringing or maintaining this lawsuit in bad faith.

138.    MSI has suffered injury, and Dillon Kane Group, STA, and ICS have been unjustly enriched, at least because MSI has suffered financial losses from Dillon Kane Group's, STA's, and ICS's competing products. Dillon Kane Group's, STA's, and ICS's interference with MSI's customer relationships was the cause of these financial losses.

139.    At all relevant times, MSI had no reasonable notice of and no reason to suspect the wrongful conduct of Dillon Kane Group, STA, and ICS, which is inherently undiscoverable. Moreover, on information and belief, Dillon Kane Group, STA, and ICS intentionally concealed their wrongful conduct from MSI. Only since STA filed its Complaint did MSI learn or have reason to learn of the injury caused by Dillon Kane Group's, STA's, and ICS's unlawful actions.

## COUNT XII

### Unfair Competition

140.    MSI incorporates and re-alleges each and every allegation above as though fully set forth herein.

141.    Dillon Kane Group, STA, and ICS have committed acts of common law unfair competition.

142.    For example, as set forth above, Dillon Kane Group, STA, and ICS have tortiously interfered with MSI's contracts with the Former MSI Employees, including by encouraging the Former MSI Employees to violate at least the non-solicitation and/or assignment provisions of their Employment Agreements. For example, Dillon Kane Group, STA, and ICS encouraged one or more of the Former MSI Employees to recruit, solicit, or induce MSI employees who possess confidential information to leave the employ of MSI. Dillon Kane Group, STA, and ICS also

57

encouraged one or more of the Former MSI Employees to solicit MSI customers to instead purchase Dillon Kane Group's, STA's, and ICS's Instant Connect product, which is intended to directly compete with MSI's existing products, including WAVE 5000. Dillon Kane Group, STA, and ICS also encouraged at least Botha to violate the assignment provision of his Employment Agreement because he failed to assign to MSI all Intellectual Property "created, conceived or reduced to practice" during the term of his employment and within six months after termination. Instead, Botha used MSI's intellectual property against MSI and for the benefit of Dillon Kane Group, STA, and ICS.

143.    As another example, the Complaint in this case is meritless and designed merely to operate as part of a coordinated campaign to interfere with MSI's PTT over broadband business in the marketplace. No reasonable litigant could realistically expect success on the merits given that the asserted claims lack any relationship to any accused system and are invalid.  Instead, Dillon Kane Group, STA, and ICS have filed the Complaint in an attempt to directly interfere with MSI's ability to compete in the PTT over broadband market.

144.    As set forth above, Dillon Kane Group's, STA's, and ICS's wrongful actions constituted and continue to constitute unfair competition. As a result of Dillon Kane Group's, STA's, and ICS's acts of unfair competition, Dillon Kane Group, STA, and ICS have interfered with MSI's ability to conduct its business, in which MSI has substantially invested.

145.    Dillon Kane Group's, STA's, and ICS's unfair competition arises out of the same transaction or occurrence as the claim that STA asserts for MSI's alleged infringement of STA patents. Underlying both claims are facts related to, for example, the operation of MSI's PTT over broadband products, including WAVE 5000, and STA's bringing or maintaining this lawsuit in bad faith.

146.     As a result of Dillon Kane Group's, STA's, and ICS's unlawful, unfair, and wrongful conduct, MSI has sustained substantial injury, including at least financial losses, as a result of Dillon Kane Group's, STA's, and ICS's unfair competition.

147.     At all relevant times, MSI had no reasonable notice of and no reason to suspect the wrongful conduct of Dillon Kane Group, STA, and ICS, which is inherently undiscoverable. Moreover, on information and belief, Dillon Kane Group, STA, and ICS intentionally concealed their wrongful conduct from MSI. Only since STA filed its Complaint did MSI learn or have reason to learn of the injury that Dillon Kane Group's, STA's, and ICS's unlawful actions caused.

## COUNT XIII

### Civil Conspiracy to Tortiously Interfere with Contract, Tortiously Interfere with Prospective Business Relationship, and Unfairly Compete

148.     MSI incorporates and re-alleges each and every allegation above as though fully set forth herein.

149.     For example, as set forth above, Dillon Kane Group, STA, and ICS have tortiously interfered with MSI's contracts with the Former MSI Employees, tortiously interfered with MSI's prospective business relationships, and unfairly competed with MSI, including by encouraging and conspiring with each other to violate at least the non-solicitation and/or assignment provisions of their Employment Agreements and to solicit MSI employees to leave MSI and MSI customers and potential customers to instead purchase Dillon Kane Group's, STA's, and ICS's Instant Connect product, which is intended to directly and unfairly compete with MSI's existing products, including WAVE 5000.

150.     Dillon Kane Group, STA, ICS, and one or more of the Former MSI Employees reached a meeting of the minds to perpetrate these unlawful acts. In doing so, Dillon Kane Group, STA, ICS, and one or more of the Former MSI Employees knowingly entered into a conspiracy to

tortiously interfere with MSI's contracts, tortiously interfere with MSI's prospective business relationships, and to unfairly compete with MSI.

151.    On information and belief, this conspiracy was undertaken and carried out with the purpose of reducing or eliminating the otherwise enormous investment of time, money, and resources that Dillon Kane Group, STA, and ICS would otherwise be required to undertake in order to develop or improve Instant Connect, to unfairly compete with MSI, and to cause damage to MSI.

152.    In furtherance of a conspiracy, Dillon Kane Group, STA, and ICS have each committed unlawful, overt acts, with the specific intent to harm MSI. For example, Dillon Kane Group, STA, and ICS lured MSI personnel to work for and work with Dillon Kane Group, STA, and ICS and have tortiously interfered with MSI's contracts with the Former MSI Employees, have tortiously interfered with MSI's prospective business relationships, and have unfairly competed with MSI.

153.    Dillon Kane Group's, STA's and ICS's conspiracy arises out of the same transaction or occurrence as the claim that STA asserts for MSI's alleged infringement of STA patents. Underlying both claims are facts related to, for example, the operation of MSI's PTT over broadband products, including WAVE 5000, and STA's bringing or maintaining this lawsuit in bad faith.

154.    MSI has suffered injury, including at least financial losses, as a proximate result of this conspiracy.

155.    At all relevant times, MSI had no reasonable notice of and no reason to suspect the wrongful conduct of Dillon Kane Group, STA, ICS, and one or more of the Former MSI Employees, which is inherently undiscoverable. Moreover, on information and belief, Dillon Kane

Group, STA, and ICS intentionally concealed their wrongful conduct from MSI. Only since STA filed its Complaint did MSI learn or have reason to learn of the injury caused by Dillon Kane Group's, STA's, and ICS's unlawful actions.

**COUNT XIV**

**Civil Conspiracy to Commit Fraud**

156.   MSI incorporates and re-alleges each and every allegation above as though fully set forth herein.

157.   For example, as set forth above, Dillon Kane Group and STA encouraged and conspired with at least Botha to commit fraud on MSI. For instance, on information and belief, Dillon Kane Group and STA encouraged and conspired with at least Botha to make material misrepresentations to MSI that were false, namely Botha's material misrepresentations that he had complied fully with MSI's requests to return MSI's property and to cease his unlawful use of the property relating to the FuM ONE product. On information and belief, Botha made these material misrepresentations, which were false, knowing them to be false or asserted without knowledge of their truth. On information and belief, Dillon Kane Group, STA, and Botha intended to induce MSI to rely and act upon the false material misrepresentations, and MSI actually and justifiably relied and acted upon such misrepresentations, such as, for example, by dropping its investigation of and legal claims against Botha.

158.   On information and belief, Dillon Kane Group, STA, and Botha reached a meeting of the minds to perpetrate these unlawful acts of fraud. In doing so, Dillon Kane Group, STA, and Botha knowingly entered into a conspiracy to commit fraud on MSI.

159.   On information and belief, this conspiracy was undertaken and carried out with the purpose of reducing or eliminating the otherwise enormous investment of time, money, and

61

resources that Dillon Kane Group and STA would otherwise be required to undertake in order to develop or improve Instant Connect, and to compete unfairly with MSI and cause damage to MSI.

160.     In furtherance of a conspiracy, Dillon Kane Group and STA each committed unlawful, overt acts, with the specific intent to harm MSI. For example, Dillon Kane Group and STA encouraged and induced Botha to commit fraud on MSI by making knowing false material misrepresentations.

161.     Dillon Kane Group's, STA's, and Botha's conspiracy arises out of the same transaction or occurrence as the claim that STA asserts for MSI's alleged infringement of STA patents. Underlying both claims are facts related to, for example, the operation of MSI's PTT over broadband products, including WAVE 5000, and STA's bringing or maintaining this lawsuit in bad faith.

162.     MSI has suffered injury, including at least financial losses, as a proximate result of this conspiracy.

163.     At all relevant times, MSI had no reasonable notice of and no reason to suspect the wrongful conduct of Dillon Kane Group, STA, or Botha, which is inherently undiscoverable. Moreover, on information and belief, Dillon Kane Group, STA, and Botha intentionally concealed their wrongful conduct from MSI. Only since STA filed its Complaint did MSI learn or have reason to learn of the injury caused by Dillon Kane Group's, STA's, and Botha's unlawful actions.

## PRAYER

**WHEREFORE**, MSI prays that the Court enter the following relief and judgment in its favor as follows:

A.     That MSI has not and does not infringe any valid and enforceable claim of the Asserted Patents;

B.     That the claims of the Asserted Patents are invalid and/or unenforceable;

ACTIVE/600161479

C.      That Dillon Kane Group, STA, and ICS misappropriated trade secrets of MSI under 18 U.S.C. § 1836 *et seq.*;

D.      That Dillon Kane Group, STA, and ICS tortiously interfered with MSI's contractual relationships;

E.      That Dillon Kane Group, STA, and ICS tortiously interfered with MSI's prospective business relationships;

F.      That Dillon Kane Group, STA, and ICS engaged in unfair competition;

G.      That Dillon Kane Group, STA, and ICS engaged in a civil conspiracy to tortiously interfere with MSI's contracts, tortiously interfere with MSI's prospective business relationships, and unfairly compete with MSI;

H.      That Dillon Kane Group and STA engaged in a civil conspiracy to commit fraud on MSI;

I.      Awarding to MSI compensatory damages from Dillon Kane Group, STA, and ICS for any and all damages, injury, and harm in an amount to be determined at trial;

J.      Awarding to MSI disgorgement of the unjust enrichment of Dillon Kane Group, STA, and ICS in an amount to be determined at trial;

K.      Awarding to MSI exemplary or punitive damages, in an amount to be determined at trial, including pursuant to 18 U.S.C. § 1836 *et seq.*;

L.      That the trade secret misappropriation was or is willful and malicious and awarding MSI its attorney's fees;

M.      That the case is exceptional and awarding MSI its attorneys' fees and costs;

N.      Awarding taxable costs and interests to MSI;

O.      Ordering Dillon Kane Group, STA, and ICS to account for and pay damages adequate to compensate MSI for the unlawful activity, including pre-judgment and post-judgment interest and costs.

P.      Ordering an accounting by Dillon Kane Group, STA, and ICS for any unlawful activity not presented at trial and an award by the court of additional damages for any such unlawful activity;

Q.      Enjoining and restraining Dillon Kane Group, STA, ICS, and their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them from pursuing further charges of infringement or acts of enforcement based on the Asserted Patents against MSI or its actual and prospective business partners, customers, suppliers, and anyone in privity with MSI;

ACTIVE/600161479

R.     Enjoining Dillon Kane Group, STA, and ICS from further misappropriation of MSI's trade secrets, unfair competition, civil conspiracy, tortious interference with contract, and tortious interference with prospective business relationships; and

S.     For any such other and further equitable or legal relief as the Court deems just and equitable, including pursuant to 28 U.S.C. § 2202.

MSI reserves the right to amend its Answer and Counterclaims to raise additional affirmative defenses and counterclaims as warranted by subsequent investigation and/or analysis.

## JURY DEMAND

MSI demands a trial by jury on all issues presented in this Answer and Counterclaims.

Dated:  June 6, 2023                    Respectfully submitted,

By:  _/s/ Melissa Richards Smith_
Melissa Richards Smith
Texas Bar No. 24001351
melissa@gillamsmith.com
**GILLAM SMITH L.L.P.**
303 South Washington Avenue
Marshall, TX 75670
Tel: 903.934.8450

Sean Cunningham (Admitted *Pro Hac Vice*)
**DLA PIPER LLP (US)**
4365 Executive Drive, Suite 1100
San Diego, CA 92121-2133
Tel: 619.699.2900
sean.cunningham@dlapiper.com

Michael D. Jay (Admitted *Pro Hac Vice*)
Nandan R. Padmanabhan (Admitted *Pro Hac Vice*)
**DLA PIPER LLP (US)**
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, CA 90067
Tel: 310.595.3000
michael.jay@us.dlapiper.com
nandan.padmanabhan@us.dlapiper.com

64

ATTORNEYS FOR DEFENDANT
MOTOROLA SOLUTIONS, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served a copy of this document this 6th day of June 2023, via the Court's CM/ECF system per Local Rule CV-5(a)(3).

**Dated:** June 6, 2023

/s/ Melissa Richards Smith
Melissa Richards Smith

ACTIVE/600161479